UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.   00-6191-Cr-WPD

United States of America,

       Plaintiff,

vs.

Fabio Ruiz,
       Defendant.
_____/

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
FOR RETURN OF SEIZED PERSONAL PROPERTY**

The United States of America, by and through its undersigned Assistant United States Attorney submits the foregoing response in opposition to the defendant's <u>pro se</u> motion for return of personal property. In support thereof the government would state as follows:

**I.   INTRODUCTION**

Defendant, a Colombian national with no residency status in the United States seeks an order from this Honorable Court mandating the return while incarcerated, of the Colombian identity documents issued to him by that country. Said Motion is meritless and should denied. Defendant, is subject to removal by the Attorney General and his representatives, the Immigration and Naturalization Service (INS), as an alien aggravated felon and will face such proceedings at the conclusion of his prison term in the United States. Said documents are evidentiary items for that proceeding and are also necessary to facilitate any removal order entered under INS policies. Once such proceedings are processed to conclusion defendant's documents will be provided to him as he embarks upon the airplane or seagoing vessel that will transport him back to his native country.

**II.   FACTS**

On August 15, 2000, defendant entered a plea of guilty to Count Two of the Indictment returned in this cause (Conspiracy to Possess with Intent to Distribute in excess of 500 Grams of

Heroin, in violation of 21 U.S.C. Section 846). The admitted facts underlying the defendant's plea consist of the following:

    a. On July 3, 2000, defendant arrived in Miami, Florida, accompanied by his wife and young child, from Colombia, South America, allegedly for a family holiday in the United States. Upon arrival in Miami, defendant and his family checked into a Miami Beach hotel.

    b. The following day, while on South Beach, defendant struck up a conversation with "Brando" (Hildebrando Uscategui), a fellow Colombian national. During the course of this conversation the subject of narcotics eventually arose and Brando suggested that defendant could make some money by transporting Heroin from South Florida to New York City. Brando specifically offered defendant the opportunity to make $5,000 in exchange for transporting about 600 grams of Heroin. Defendant immediately agreed to do so.

    c. One day later Brando brought the drugs to defendant's hotel room. Defendant took the drugs from Brando and secreted them inside his own suitcase.

    d. The following morning, July 6, 2000, Brando returned to defendant's hotel, picked up defendant and his family, and drove them to the Fort Lauderdale Airport. Once at the airport Brando purchased tickets for defendant, himself, defendant's wife and defendant's child.

    e. After proceeding to the departure gate the activities of both defendant and Brando aroused the suspicions of local drug interdiction detectives. In the course of that encounter the $5,000 cash payment was found and seized from Brando and the drugs were eventually located in defendant's suitcase. While the detectives attempted to retrieve defendant's checked baggage and before the discovery of the drugs Brando managed to elude the detectives and disappeared from the airport.

    f. Following being confronted with the discovery of the drugs and proper administration and waiver of <u>Miranda</u> warnings, defendant confessed to his participation in the smuggling venture and provided the information set forth above.

At the time of defendant's arrest his Colombian passport and other identity documents, including his Colombian driver's license were seized and, in turn, provided to Broward County Pretrial Services. Through a conversation held by the undersigned with Assistant Deputy Chief of Pretrial Services Gregory Glasson on February 5, 2002, the undersigned has learned that said items continuously remained in the custody of Pretrial Services from the date of their turnover in July 2000 to the present. Since Mr. Glasson is now aware that the defendant is an aggravated felon deportable alien, he has informed the undersigned that in accordance with longstanding policy such travel documents will be forwarded to the INS for insertion into an alien immigration file or "A" file where, upon their receipt, they will be maintained therein by INS while defendant's removal proceedings are pending.

The retention of said documents serves a two fold purpose for the INS. First, the documents are evidence of an alien's status and may be introduced at a removal hearing as proof of same. Secondly, retention of the documents by the INS insures that proper documentation is within the service's possession when it moves to implement a removal order. If such documents are lost or absent return of the alien to his native country must be delayed until replacement documents are procured, at times a lengthy process. At the time an alien is booked for a flight or passage home and begins embarkation the identity documents are returned to his possession.

## ARGUMENT

The removal of aliens is a fundamental act of sovereignty. United States ex rel. Knauff v. Shaugnessy, 338 U.S. 537, 542 (1950). The right to remove aliens resides with both the executive and legislative branches of the federal government and the political branches have plenary authority in this area. Knauff v. Shaugnessy, 338 U.S. at 542; Jean v. Nelson, 727 F.2d 957, 964 (11th Cir. 1984).

Within the context of U.S. Immigration laws aggravated felon deportable aliens possess limited substantive rights. 8 U.S.C. §1228; Landon v. Plasencia, 459 U.S. 21, 26-29 (1982); Moore v. Ashcroft, 251 F.3d 919, 922-23 (11th Cir. 2001).

Nonetheless, an administrative inquiry is required before removal at which time evidence and witnesses are presented. 8 U.S.C. §1229a. At said hearing the burden is on the INS to establish by clear and convincing evidence that the individual is 1) an alien, and 2) deportable. Proof of citizenship and/or alienage are obvious material concerns at such proceedings. At such hearings official documents such as an alien's passport and driver's license are relevant and material documents for an alien's removal. Cordon De Ruano v. Immigration and Naturalization Service, 554 F.2d 944, 946-947 (9th Cir. 1977); Da Silva Pereira v. Murff, 169 F. Supp. 81 (D.NY. 1958).

In the instant case Pretrial Services has a longstanding policy of providing the INS with defendant identity documents for its use for valid evidentiary and administrative purposes. As can readily be ascertained from both Cordon De Ruano and Da Silva Pereira utilization of such documents forms an important part of the evidence needed by the government to establish alienage and effect removal. Furthermore, retention of those documents to facilitate orders of removal serves the rational aim of timely effectuating those orders. Given the executive branch's plenary authority over alien affairs, its inherent power to enforce its authority in such a restrained and rational manner as outlined here cannot be seriously questioned. Certainly in the instant case, where defendant possesses no present need for those documents and realistically will not have such a need until the point where INS will in fact return them to him there is no basis to disturb the rational decision made by Pretrial Services to forward INS the documents for its use in defendant's future removal proceedings. See, e.g., United States v. Duncan, 918 F.2d 647, 654 (6th Cir. 1990) (defendant's right to the return of lawfully seized property is subject to any continuing interest the government has in the property. The government's interest may take different forms as long as it is a legitimate interest).

4

IV.  Conclusion

Wherefore, for all of the above reasons the United States respectfully requests that the defendant's motion for return of seized personal documents be denied.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

BY: _____
RANDY A. HUMMEL
ASSISTANT UNITED STATES ATTORNEY
FLORIDA BAR NO. 0973378
99 NE 4th Street, Suite 500
Miami, Florida 33132
(305) 961-9043
(305) 536-7214  (fax)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 5th day of February, 2002 to: Fabio Ruiz, Registration No. 55394-004, Federal Correctional Complex Low P.O Box 1031, Coleman, FL 33521-1032.

_____
RANDY A. HUMMEL
ASSISTANT UNITED STATES ATTORNEY